Whyte, J.
delivered the opinion of the court. Duncan Bonds was indicted in the circuit court of the county of Lincoln, at its September term, in the year 1824, for the murder of Felix Crunk. To the indictment, upon his arraignment, he pleaded not guilty, and put himself upon the country, and the attorney general did the like. The jury found the prisoner guilty of the murder, wherewith he was charged by the bill of indictment, and the circuit court passed sentence of death upon him. Whereupon the defend; ant, by his counsel, tendered two bills of exceptions; which being signed and sealed by tbe court, ánd made a part, of the record, a writ of error .was taken to this court.
The-first bill of exceptions shows, that when the prisoner was led to the bar, and was asked by the court if he had any thing to say why sentence of death should not be pronounced upon him, in answer thereto by his counsel, he alleged that he was at that time a lunatic, and that sentence could not bo pronounced upon him; and offered to plead his lunacy in bar of the sentence; and also demanded of the court that a jury be called to try the issue of fact arising upon that plea. But the court, upon inspection of the prisoner, and upon consideration of the case — because nothing was shown to render it probable that defendant was a lunatic, or to make that matter doubtful — refused to allow the prisoner his plea aforesaid, and denied him the privilege of a jury at this time, to try the question of his sanity or insanity, *144 and proceeded to pronounce the sentence of death accord-¡ngiy — the prisoner having nothing further to allege to the contrary. .
Upon this bill of exceptions, it is contended by the de-Pendant’s counsel, that there is error in this; that the circuit court refused, upon the allegation by them made, of the lunacy of the prisoner, to receive a plea of lunacy in bar of the sentence of death being pronounced at that time, and to empannel a jury to try the truth of the plea; and it was urged, that this course of proceeding, upon the allegation of lunacy, made by the counsel, on behalf of the prisoner, was not a matter of choice or discretion with the court, but imperative, and that the allegation must be taken as true by the court, unless the fact was submitted for trial to a jury; and 1 Chitty C. L. is cited in support of this position, where it is laid down, “the judge may, if he pleases, swear a jury to inquire ex officio, whether the prisoner is really insane, or merely counterfeits; and, if they find the former, he is bound to reprieve him till the ensuing session.” The meaning of this passage, giving it a reasonable construction, must be, that if upon the question made, the judge is not satisfied, or has doubts, he may call in to his assistance the aid of a jury, and submit the matter to them. The law on this point, is more fully stated in 1 Hawk. P. C. page 3, in ihe notes; where it is said, “every person of the age of discretion, is presumed of sane memory, until the contrary appears, which may be, either by the inspection of the court, (1 Hale 33; Tr. per pais 14; O. B. 1724, No. 4.) by evidence given to the jury, who are charged to try the indictment, (3 Ba. Abr. 21; 1 Hale 33, 35, 36; O. B. 1124, No. 222;) or, by being a collateral issue, the fact may be pleaded and replied to one term, and a venire awarded, returnable instanter in the nature of an inquest of office; (Inst. 46; Keil. 13; 1 Term 61;) and this method, in cases'/of importance, doubt or difficulty, the court will in prudence and discretion adopt. (1 Hale 35, 50, 56; 1 And. 154.) From this it appears, that inspection by the court, is one of the legal modes of trying the fact of insanity; and nothing appears in the record of this case, to show that the discretion *145 oT the court, in adopting the mode pursued, was erroneously exercised. Tiiis court, therefore, is of opinion, that there is no error in the matter of the first bill of exceptions.
The second bill of exceptions states, that the prisoner, by his counsel, in this case excepts to the whole proceedings of the court in this cause. They allege that there was no clerk or deputy to this court during the term. James Bright, who is the clerk of this court by appointment, having been absent during the whole term, and Benjamin W. D. Carty, by whom the usual business of the clerk has been done, being called to the book, on oath stated, that he is not clerk, nor has he any written appointment under the hand and seal of Bright, the clerk, as deputy, nor has he qualified as deputy by taking oath or otherwise. But he was, before the commencement of this term, by parol, and after-wards by letter from Mr Bright, instructed and requested to attend to the business of the office and court, during his absence; he further stated, that he had done business for three years as deputy heretofore — all which is excepted to.
The argument upon this bill of exception, is, that although the office of clerk has been filled in fact, and the duties in this office performed by a deputy in that character, for the last three years, in absence of the clerk, yet inasmuch as this deputy was only authorized by parol and by letter, to officiate in the place and name of the clerk, and not by and under seal, and was not sworn into the office of deputy clerk eo nomina; therefore, the said term of Lincoln circuit court is to be considered as having been now without a clerk, which is erroneous.
Two points are here made. First, can the clerk of a circuit court appoint, or act by a deputy? and secondly, has a deputy been appointed by the clerk in the present case?
As to the first, the acts of assembly directing the appointment of clerks to the circuit courts, and prescribing their duties in office, (see acts of 1809, ph. 47, sec. 8, and 1744, ch. 1, sec. 2,) are silent as to deputies, no doubt intentionally so, leaving that to the clerks themselves; dealing with the clerks only, and holding them responsible for all acts to *146 be performed by them in virtue of the office, and (whether is a deputy or not,) looking to the clerk in all cases for responsibility, in matters appertaining by law to his of-The act óf 1805, ch. 1, sec. 1 and 2, requiring cer-tajn acts to be done by the clerks of the courts, or their deputies, recognizes the existence of deputies, and their legal capability of performing the duties of the office of their principals. And no good reason appears in the present case, why the clerk of the circuit court may not discharge the duties of his office, during term time, by deputy or substitute, especially those duties that are purely of a ministerial nature, such as appear to be performed in this record.
As to the second point, it has not been shown, that a deputation, under the hand and seal of the clerk of a circuit court, is necessary by our acts of assembly, to the constituting or appointing of a deputy, or that an oath of office is necessary for this purpose. In England, where an official oath is a requisite for a deputy, the qualification is introduced by statute. (6 Ba. Abr. 150.) Nor does it appear to be necessary, that the appointment of deputy clerk, should be by deed, on account of the public interest. The matter of appointment is between the principal and deputy, whether the contract of substitution is by parol or by deed, is of no concern to the public: the due and faithful performance of the duty is well secured by the bonds of the principal. Besides, during term time, the ministerial acts of the clerks are immediately under the inspection, control and direction of the court, subject to revision every day, and thereby well secured against operating either to public or individual injury. It was further objected by the defendant’s counsel,thatitdidnot appear thatthe grand jurors were freeholders or householders. The record shows thatthey were good and lawful men; which comprehends every necessary qualification in such case prescribed by law. It might be further observed, that as this indictment was found in a superior court, the statement of “good and lawful men,” does not even seem to be absolutely essential. (1 Chitty C. L. 333; 2 Hawk. ch. 25, sec. 126.)
Be.ll and G. M. Fogg for the plaintiff in error.
JL Hay's •’(¡'attorney general) for the state.
It is the opinion of the court that there is no error in this record.*
Judgment affirmed.

At a subsequent day of the term, it was represented to the court, that the prisoner was then in a state of insanity; and several affidavits were read to the court, tending to. show that fact. The court, with the assistance of several eminent physicians, investigated the matter, with great patience and assiduity, and became fully satisfied that the prisoner was in a deranged state of mind — his execution was, therefore, respitecf until the further order of the court. — Reporters*